**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

---

Denise Sando,                                            Court File No.   17-cv-640

          Plaintiff,

v.                                                            **JURY TRIAL DEMANDED**
                                                                 **COMPLAINT**

Wood River Pharmacy, Inc. &
     Chris Witzany

          Defendant.

---

Plaintiff, by her attorneys, Shannon Law, LLC, brings this action for damages and other legal and equitable relief resulting from Defendants' violations of law. Plaintiff states the following as her claims against Defendants:

## PARTIES

1.     Plaintiff Denise Sando ("Plaintiff") is an individual who resides in Grantsburg Wisconsin.

2.     Defendant Wood River Pharmacy, Inc. is a Wisconsin corporation operating as a pharmacy in Grantsburg Wisconsin.

3.     Defendant Chris Witzany is an adult individual who resides in Grantsburg Wisconsin.

## JURISDICTION AND VENUE

4.     Plaintiff's claims arise under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* Jurisdiction for these claims is conferred upon this Court by 28 U.S.C. § 1331.

5.      This Court has supplemental jurisdiction over Plaintiff's common law tort claim under Wisconsin law pursuant to 28 U.S.C. § 1367.

6.      Venue is appropriate because the unlawful practices described hereinafter were committed in the Western District of Wisconsin and the business and related records at issue are in the Western District of Wisconsin.

## FACTUAL ALLEGATIONS

7.      Plaintiff worked for Defendant Wood River Pharmacy as a Clerk Pharmacy Technician and Unit Dose Department Manager for 17 years.

8.      Throughout Plaintiff's employment, she received consistently-positive performance reviews.

9.      Plaintiff has Frozen Shoulder Syndrome as a result of a torn rotator cuff in her left shoulder, which occurred in 2012. Plaintiff's shoulder disability substantially limited her use of her left arm, to the point that she could only complete occasional very limited tasks with her left arm and hand.

10.     Plaintiff also has Anxiety, Depression, Sjogren's Disease, and Lupus, all of which were controlled prior to 2012. When Plaintiff is subjected to additional stress and without the ameliorative effects of medications, she is virtually incapacitated from these disorders. She has insomnia, her autonomic nervous system is overactive, she has difficulty leaving the house, her digestive system is dysfunctional, her memory and cognition is sometimes impaired, her immune system is depressed, she has difficulty overcoming viruses of any kind, she suffers from severe migraines, and her body aches everywhere making it difficult and painful to move.

11.     During Plaintiff's employment, Plaintiff and the other Pharmacy Technicians coordinated their schedules with one another, and compiled the work schedule as a team, without the Managing Pharmacist, Chris Witzany, being involved in the process.

12.     Consequently, Plaintiff's and the Pharmacy Technicians' schedule was not set, remained flexible, and permitted the Pharmacy Technicians to accommodate one-another's' scheduling needs.

13.     Wood River Pharmacy's Family Medical Leave policy guaranteed Plaintiff "Up to twelve weeks of unpaid leave" for "certain family and medical reasons" provided the employee "worked at least 1,250 hours in the previous twelve months."

14.     Throughout Plaintiff's employment, she met these qualifications, and therefore was eligible to take leave for a "serious health condition that ma[de her] unable to perform [her] job."

15.     In addition, Plaintiff had three weeks of vacation time per year as a benefit of her employment.

16.     On November 5, 2012, Plaintiff's doctor provided a note which she gave to Witzany, stating that Plaintiff's working hours should be restricted to 4-6 hours per day to accommodate her shoulder disability.

17.     Plaintiff met with Mr. Witzany that day and explained that she could still perform her job duties with a slightly reduced schedule, and limited use of her left arm.

18.     Although Witzany agreed to Plaintiff's accommodations request initially, on January 28, 2013, he expressed retaliatory intent toward her because of her need for accommodations.

3

19.     Witzany complained to Plaintiff that he had to hire an additional person "because of [her]," and stated that the owner Sam Venigalla did not appreciate having to hire an additional person. He said that hiring an additional employee is "always a last resort," and sarcastically quipped, "Well, you know YOUR job is safe, so don't worry!"

20.     On March 14, 2014, Plaintiff received a note in her paycheck envelope stating that her vacation hours were being reduced because of her reduced hours.

21.     Other nondisabled employees did not have their vacation time reduced even when their working hours were reduced.

22.     Plaintiff asked Witzany why he reduced her vacation hours, when another nondisabled colleague did not have her vacation hours reduced when she began working less hours. Witzany grinned, and responded, "What are you going to do, take me to court?"

23.     Witzany was on vacation for a week immediately after this conversation, and the first thing he did upon his return was call Plaintiff into his office to demand a letter of apology for being "insubordinate" because Plaintiff had pointed out that she was being treated unequally. Witzany informed Plaintiff that if she did not submit an apology, she would no longer be permitted to continue working for Wood River Pharmacy.

24.     In the following months, Witzany began hyper-scrutinizing Plaintiff and holding her to different performance standards than any of the other Technicians.

25.     He accused Plaintiff of performing her duties incorrectly, even though her nondisabled coworkers who had not claimed unequal treatment were doing the same things, and it had never been a problem.

26.     Witzany's criticism was pervasive, irrational, and unrelenting.

4

27.    As a result of Witzany's discriminatory and retaliatory harassment, Plaintiff's Anxiety and Depression, which had been well-managed and controlled before, became exacerbated and forced her to need treatment.

28.    Plaintiff informed Witzany that his disparate treatment of her was causing significant emotional distress. He responded, "I can't be known in this town as the pharmacist who made work so bad his employee had to go on anti-depressants."

29.    By June 23, 2014, Plaintiff's working hours had increased again, so she approached Witzany to ask that her vacation time be increased again to reflect her working hours. Witzany grinned at her, and said that because she "caused such a row" over the vacation time issue earlier, he was going to punish her by requiring her to wait three more months or "maybe more" before he would even consider increasing her vacation time again.

30.    On July 16, 2014, Plaintiff submitted a note from her doctor stating that she needed a two-week medical leave of absence.

31.    Plaintiff made arrangements with everyone in her department to cover her shifts in advance.

32.    Although Witzany had never before interfered with the Pharmacy Technicians' process for covering shifts when one of them needed to take a leave or vacation, he called Plaintiff into his office upon her return from leave to reprimand her.

33.    Witzany demanded to know why Plaintiff took the leave when she did, and told Plaintiff that she put the department in a "bad position." Plaintiff pointed out that she

coordinated with her coworkers as a group to cover all of the work, just as they had done in the past.

34.    Plaintiff spoke with her coworkers, and they all agreed that she had taken leave at an appropriate time.

35.    In Plaintiff's next paycheck envelope, she received a note stating that her pay would be reduced by 10% after Witzany completed performance reviews.

36.    Plaintiff was the only employee with a pay deduction.

37.    Witzany then gave all of the other employees an evaluation, but denied Plaintiff an evaluation.

38.    When Plaintiff requested her evaluation because the company policies mandate annual performance reviews, he became visibly angry and refused.

39.    Witzany reduced Plaintiff's wage by 10% without providing her with a review.

40.    On August 22, 2014, Plaintiff's doctor issued another order for her to take one week of medical leave.

41.    Plaintiff provided the note to Witzany, who reviewed it and said, "I am so sick of this drama."

42.    During the week that Plaintiff was on leave, Witzany complained about Plaintiff and made false allegations about her to her coworkers.

43.    Upon Plaintiff's return from leave, Witzany was visibly upset with her during their interactions, was abrupt and short with her, and treated her generally rudely.

44.     On September 29, 2014, Plaintiff contacted Wood River Pharmacy's owner Sam Venigalla to report that Witzany was discriminating and retaliating against her.

45.     On October 2, 2014, Venigalla (who resides out-of-state) visited Wood River Pharmacy and went to a long lunch with Witzany and Witzany's wife.

46.     Upon their return from lunch, Venigalla met with Plaintiff, and she explained that she had been treated unequally and unfairly for the past one and one-half years, and that it was getting worse over time. Plaintiff informed him that she had her wages and vacation time reduced and was denied evaluations. She pointed out that her medical leave was mishandled, that her manager was talking negatively about her to her coworkers, and that her manager's response to her request for accommodations was that he was "sick of the drama."

47.     Venigalla told Plaintiff, "I am just the wallet behind this operation. Chris is free to run the pharmacy as its manager however he wants."

48.     Plaintiff requested that her complaints and the conversation be documented in Wood River Pharmacy's files.

49.     That afternoon after Venigalla left, Witzany called Plaintiff into his office. He was furious with Plaintiff, and told her "Nobody goes over my head without consequences." He berated her for speaking with Venigalla about the discrimination and retaliation she was experiencing.

50.     Witzany then directed her to take October 3, 2014 off of work without pay, and told her that she would not be permitted to return to work until she wrote a letter explaining how she was going to be happy at Wood River Pharmacy in the future.

51.     Plaintiff did as she was told.

52.     On October 15, 2014, Plaintiff's doctor placed her on restrictions to work six hour shifts for one month.

53.     Plaintiff coordinated her schedule with all of the other staff in her department, and left the doctor's note for Witzany, as he was not at work that day.

54.     When Witzany returned to work on October 17, 2014, he informed Plaintiff that he wanted to speak with Plaintiff immediately to discuss the doctor's note.

55.     When Plaintiff came into Witzany's office, he told her, "You have two options here: you can quit or be fired. I am done with this today. If you want to save face in this small community, you can just quit."

56.     Plaintiff said she would not resign, and Witzany terminated her employment on the spot.

57.     As Plaintiff was gathering her personal belongings to leave, Witzany handed her a termination letter that he wrote and signed. Witzany listed the following reasons for her termination:

1. Repeated incidents of insubordination towards her manager
2. Undermining and questioning her managers authority over her
3. A sentiment that she is being treated unfairly despite management attempts to get her to see it from another perspective

58.     On October 19, 2015, Plaintiff timely filed a charge of disability discrimination and retaliation with the Equal Employment Opportunity Commission.

59.     Plaintiff continued to search for other vacant, available position in her field and geographic area for which she was qualified, but was unable to secure employment.

60.     One of the major employers in her rural area told Plaintiff that Witzany, when contacted, them to tell them not to hire Plaintiff. Consequently, she did not receive offers or even interviews despite her qualifications for several openings.

61.     On February 13, 2017, the EEOC issued a determination of "Probable Cause" following a lengthy investigation, and Defendants were thereafter required to participate in conciliation.

62.     In May 2017, another employee of Wood River Pharmacy approached Plaintiff, and informed her that Witzany had been involving all of the employees at the pharmacy in her charge and conciliation process, informing them of what was occurring at each stage, and falsely accusing Plaintiff of wrongdoing in the process.

63.     Witzany indicated to the Wood River Pharmacy employees that if Plaintiff did not settle her case for a small amount of money, the employees could be out of a job and / or Plaintiff would cause the pharmacy to shut down.

64.     The employee informed Plaintiff that Witzany encouraged Wood River Pharmacy employees to be upset with Plaintiff because by pursuing her legal rights, she placed their livelihoods at risk.

65.     On June 9, 2017, the EEOC issued a right-to-sue letter, and this Complaint follows.

## COUNT I

## DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12112

66.     Plaintiff incorporates the above paragraphs as if fully restated herein.

9

67.    Pursuant to 42 U.S.C. § 12112, it is unlawful to discriminate against an employee or to fail to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."

68.    Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. § 12102.

69.    At all times relevant and material hereto, Plaintiff and Wood River Pharmacy, Inc. have been employee and employer, respectively, for purposes of 42 U.S.C. § 12111.

70.    Wood River Pharmacy discriminated against Plaintiff by reducing her wages and benefits, holding her to disparate standards, denying her evaluations, denying reasonable accommodations, terminating her employment, and disparaging her to other employees and in the community in violation of 42 U.S.C. § 12112.

71.    As a direct and proximate result, Plaintiff has suffered and continues to suffer loss of income and employment benefits, mental anguish, emotional distress, humiliation, and other damages in an amount to be determined at trial.

## COUNT II

## RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12203

72.    Plaintiff restates the above paragraphs as if fully incorporated herein.

73.    Under 42 U.S.C. § 12203, it is unlawful for any person to retaliate against an individual because s/he has opposed any act or practice made unlawful under the ADA, or because the individual filed a charge, testified, assisted, or participated in an investigation,

10

proceeding or hearing. It is also unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of her having exercised or enjoyed, or aided or encouraged any other individual in the exercise or enjoyment of rights under the ADA. Id.

74.    Defendants' conduct set forth herein violates 42 U.S.C. § 12203.

75.    As a direct and proximate result of Defendants' violation, Plaintiff has suffered and continues to suffer loss of income and employment benefits, mental anguish, emotional distress, humiliation, and other damages in an amount to be determined at trial.

## COUNT III

## VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. § 2615

76.    Plaintiff incorporates the above paragraphs as if fully restated herein.

77.    Defendants were Plaintiff's employer, and Plaintiff was Defendants' employee under the FMLA.

78.    Defendants are collaterally estopped from denying coverage under the FMLA, because its policies assured Plaintiff that she was covered, and Plaintiff detrimentally relied on those policies.

79.    Pursuant to 29 U.S.C. § 2615, it is unlawful for employers to take adverse action against an employee because of the exercise of rights under the FMLA or to interfere with an employee's exercise of said rights.

80.    Plaintiff was familiar with, and relied to her detriment on Defendants' FMLA policy.

81.    Plaintiff exercised her rights to take and request medical leave, and in response Defendants held her to a higher standard than similarly-situated employees, reduced her wages, reduced her benefits, treated her with contempt and intimidation, terminated her, disparaged her to other employees, and threatened other employees because of her exercise of her legal rights.

82.    Defendants' actions violate 29 U.S.C. § 2615.

83.    Defendants' violations of the FMLA caused Plaintiff to suffer and loss of income and employment benefits, emotional distress damages, and other damages in an amount to be determined at trial.

## COUNT IV

## TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTS

84.    Plaintiff incorporates the above paragraphs as if fully restated herein.

85.    To prove that Defendants tortiously interfered with her employment relationships with third parties, Plaintiff will establish, as set forth above: (1) that she had prospective contractual employment relationships with third parties in the area; (2) that Witzany interfered with her prospective employment relationships; (3) that Witzany's interference was intentional; (4) that there is a causal connection between the interference and Plaintiff's resulting damages; and (5) that Witzany was not privileged to interfere with Plaintiff's prospective employment. Duct-O-Wire Co. v. U.S. Crane, Inc., 31 F.3d 506, 508 (7th Cir. 1994); Dorr v. Sacred Heart Hosp., 228 Wis. 2d 425, 456-57, 597 N.W.2d 462 (Ct. App. 1999).

86.     Because Witzany intentionally interfered with Plaintiff's prospective employment contracts by disparaging her to prospective employers in the area, Plaintiff was unable to secure alternative comparable employment.

87.     Defendants therefore tortiously interfered with Plaintiff's prospective employment contracts, causing Plaintiff to suffer and loss of income and employment benefits, emotional distress damages, and other damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Denise Sando, prays for judgment against Defendants as follows:

A.     For all relief available for Defendants' violations of the Americans with Disabilities Act including, but not limited to, damages for past and future lost wages and benefits, punitive damages, emotional distress and mental anguish damages, additional actual damages, civil penalties, attorneys' fees and costs, and injunctive, equitable, and declaratory relief;

B.     For all relief available for Defendants' violations of the Family and Medical Leave Act, including, but not limited to, damages for past and future lost wages and benefits, emotional distress damages, any additional monetary losses, liquidated damages, penalties, attorneys' fees and costs, and injunctive, equitable, and declaratory relief;

C.     For all relief available for Defendants' tortious interference with Plaintiff prospective contracts for employment, including but not limited to damages for lost wages, employment benefits, actual monetary losses she has sustained, punitive damages, emotional distress damages, equitable, injunctive, and declaratory relief, and attorneys' fees and costs;

D.     For declaratory relief stating that Defendants have violated Plaintiff's rights set forth herein;

E.     For all other available declaratory, equitable and injunctive relief;

F.      For an award of Plaintiff's attorneys' fees, costs and disbursements; and

G.      For such further and other relief as the Court deems just.

Respectfully submitted,

**SHANNON LAW, LLC**

Dated: <u>August 21, 2017</u>          *s/Adrianna Shannon*
Adrianna H. Shannon (#<u>1064788</u>)
ashannon@shannonlawllc.com
Bonnie M. Smith  (#<u>1079793</u>)
bsmith@shannonlawllc.com
333 South Seventh Street, Suite 2830
Minneapolis, MN 55402
Telephone: (952) 679-8868
Facsimile: (952) 241-9201

*Counsel for Plaintiff Denise Sando*